O8LBDURP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                      21 Cr. 692 (VEC)

OLMES DURAN-IBARGUEN,

          Defendant.

                              Plea
------------------------------x

                              New York, N.Y.
                              August 21, 2024
                              2:30 p.m.

Before:

               HON. VALERIE E. CAPRONI ,

                            District Judge

                APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  SAMUEL S. ADELSBERG
    Assistant United States Attorney

DUANE MORRIS
    Attorneys for Defendant
BY:  ERIC R. BRESLIN
    ARLETTA K. SINGH

Also Present:  Cristina Weisz, Interpreter (Spanish)

               Jill Hoskins, Interpreter (Spanish)

O8LBDURP

(Case called)

THE DEPUTY CLERK: Counsel, please state your appearance for the record.

MR. ADELSBERG: Good afternoon, your Honor. Sam Adelsberg on behalf of the government.

THE COURT: Good afternoon, Mr. Adelsberg.

MR. BRESLIN: Good afternoon, your Honor. Eric Breslin of Duane Morris with Arletta Singh for the defendant who is to my right.

THE COURT: Good afternoon, Mr. Breslin, Ms. Singh. And good afternoon, Mr. Duran. Please be seated.

THE DEFENDANT: Good afternoon.

THE COURT: All right. Mr. Breslin, does your client have an application? Do I have a signed version of this by the way?

MR. BRESLIN: You should, your Honor.

THE COURT: I do. Mr. Breslin, does your client have an application?

MR. BRESLIN: We do, your Honor. We're here to ask the Court to change his plea of not guilty to guilty pursuant to a plea agreement that was executed between him and the government last week and that was sent to your Honor's chambers.

THE COURT: OK. All right. Mr. Duran, your attorney has told me that you wish to plead guilty. Before that can

3

happen, I need to ask you some questions so I could be sure that you're pleading guilty because you are guilty and not for any other reason and that you fully understand the rights that you will be giving up and the consequences of your plea.

Ms. Caliendo, could you please swear in Mr. Duran.

(Defendant sworn)

THE DEPUTY CLERK: State your full name for the record and spell your last name.

THE DEFENDANT: Olmes Duran-Ibarguen.

THE COURT: How do you spell "Duran?"

THE DEFENDANT: D-U-R-A-N.

THE COURT: OK. Mr. Duran, you're now under oath. What that means is that if you answer any of my questions falsely, the government can use your answers against you in a prosecution for perjury or for making a false statement.

Do you understand that?

THE DEFENDANT: Sorry. Could you please repeat that.

THE COURT: Sure. You're under oath. You've sworn to tell the truth. Because you've sworn to tell the truth, if you say anything that's false, the government can use your answer against you in a prosecution for perjury, which means lying under oath or making a false statement.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, how old are you?

O8LBDURP

THE DEFENDANT:  I'm 56-years-old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  High school.

THE COURT:  Where were you born?

THE DEFENDANT:  June 26, 1968.

THE COURT:  No, where.

THE DEFENDANT:  In Bajo Baudo Choco.

THE COURT:  How do you spell that?

THE DEFENDANT:  Pesaro Municipality.

THE INTERPRETER:  P-I-S-A-R-R-O.

THE COURT:  Is that in Columbia?

THE DEFENDANT:  Columbia.

THE COURT:  Are you able to read and understand English?

THE DEFENDANT:  No, I don't understand English.

THE COURT:  Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT:  Yes, physicians have checked my health.

THE COURT:  And are you being treated for anything?

THE DEFENDANT:  Yes.

THE COURT:  What are you being treated for?

THE DEFENDANT:  Yes, for hemorrhoids, my blood pressure, thyroid and thyroid cancer.

THE COURT:  Are you taking medicine for any of those

O8LBDURP

things?

THE DEFENDANT: Yes, I'm taking medications for high blood pressure, thyroid and thyroid cancer for the rest of my life.

THE COURT: Do any of those medications affect your ability to perceive what's going on around you?

THE DEFENDANT: Yes, I understand.

THE COURT: Do any of those medications affect your ability to think clearly?

THE DEFENDANT: No, no, not for thinking.

THE COURT: Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized for treatment of any type of addiction?

THE DEFENDANT: For addictions, no, no.

THE COURT: Other than the medications that you were prescribed by a doctor, in the past 24 hours have you taken any drugs, medicines or pills or have you consumed any alcohol?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Your attorney has told me that you wish to plead guilty. Is that correct?

THE DEFENDANT: Yes.

O8LBDURP

THE COURT: Have you had an opportunity to discuss this case with your attorney, including the consequences of pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with Mr. Breslin and his representation of you?

THE DEFENDANT: The lawyer, yes, correct.

THE COURT: Does either attorney have any doubt about the defendant's competence to enter a guilty plea at this time?

MR. ADELSBERG: No, your Honor.

MR. BRESLIN: No, your Honor.

THE COURT: On the basis of the defendant's responses to my questions and my observations of his demeanor, I find that he's fully competent to enter an informed guilty plea at this time.

Mr. Duran, before I accept your guilty plea, I'm going to describe to you the rights that you have that you will be giving up if you plead guilty. Please listen carefully. If you don't understand any of my questions or if you just need an opportunity to talk to your attorney, tell me that and I'll stop and give you an opportunity to talk to your attorneys. OK?

THE DEFENDANT: That's fine.

THE COURT: Your attorney has told me that you wish to plead guilty. You have the right to plead not guilty and to

O8LBDURP

persist in that plea.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You have the right to be represented by an attorney at trial and at every other stage of the proceedings. If you cannot afford an attorney, an attorney will be appointed to represent you without cost to you.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You have the right to a speedy and public trial by a jury on the charges against you that are contained in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you went to trial, you would be presumed innocent.  The government would be required to prove beyond a reasonable doubt that you were guilty.  You would not have to prove that you're innocent at trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you went to trial, you would have the right to see and hear all of the witnesses, and your attorney consider cross-examine the witnesses that the government calls.

Do you understand that?

THE DEFENDANT:  Yes.

O8LBDURP

THE COURT: If you went to trial, your attorney could object to the government's evidence. You would also have the right to present evidence and the right to compel witnesses to come to court to testify in your behalf.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you went to trial, you would have the right to testify if you wanted to, but you could not be forced to testify if you did not want to. If you chose not to testify, I would tell the jury they could not hold that against you.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If there were a trial, the jury would be composed of 12 people, and all 12 would have to agree that the government has proven you guilty before they could find you guilty.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you were convicted at trial, you would have the right to appeal the verdict.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty and I accept your plea, you'll be giving up all the rights that I have just

O8LBDURP

described, except your right to an attorney, and you'd be found guilty just based on your plea of guilty.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: We have to go through a number of more things before I actually ask you how you plead. Up until the point when I ask you how you plead and you tell me you're guilty, you can change your mind. Once I accept your guilty plea, it's final.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Duran, did you receive a copy of the indictment which is numbered 21 CR 692?

THE DEFENDANT: Yes.

THE COURT: Did somebody read the indictment to you?

THE DEFENDANT: Yes.

THE COURT: Did you discuss the indictment with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: You're charged in Count One with conspiring to import into the United States massive quantities of cocaine. The government is agreeing to allow you to plead guilty to what we call a lesser-included of that which is conspiracy to import into the United States more than 500 grams of cocaine. Do you understand what you're offering to plead

O8LBDURP

guilty to?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Mr. Adelsberg, what are the elements of this offense?

MR. ADELSBERG: Thank you, your Honor. Count One of the indictment charges the defendant with conspiring from at least in or about October 2020 through in or about November 2021, to import into the United States five kilograms and more of cocaine in violation of Title 21 U.S. Code Sections 952(a), 959(a), 960(a)(1), 960(a)(3), 960(b)(1)(B)(2) and 963. As your Honor noted pursuant to the plea agreement, the government will accept a guilty plea to the lesser-included offense under 21 U.S.C. 960(b)(2)(B)(2).

And there are three elements to the Section 963 offense. One is the existence of the charged conspiracy, which is an agreement or understanding between two or more persons; A, to import a controlled substance into the United States; or B, to manufacture or distribute a controlled substance intending and knowing that at least some of that controlled substance would be imported into the United States.

Two, the defendant knowingly and intentionally associated himself with and joined in that conspiracy; and then three, that the controlled substance that the defendant conspired to import or to manufacture or distribute was 500 grams or more of cocaine. And the government would also need

O8LBDURP

to prove by a preponderance of the evidence that venue is proper in the Southern District of New York. And here, it would be proper under 18 U.S.C. Section 3238 if the defendant was first brought to the Southern District of New York.

THE COURT: Mr. Duran, if you don't plead guilty, the government would have to prove all of the elements that the prosecutor just laid out beyond a reasonable doubt at trial.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: The maximum possible penalty for the crime that you're offering to plead guilty to is a term of imprisonment of up to 40 years. It carries a minimum, a mandatory minimum term of imprisonment of five years. So no matter what your sentence has to be at least five years. The term of supervised release that can be as long as the rest of your life and must be at least four years. A fine of up to $5 million or two times the pecuniary gain from the crime or two times the pecuniary lost from the crime, whichever one of those three numbers is largest, and a mandatory $100 special assessment.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Supervised release means that you'll be subject to monitoring and supervision after you're released from prison.

O8LBDURP

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  There are terms and conditions of supervised release that you have to comply with.  If you don't comply with those terms and conditions, you could be returned to prison without a jury trial.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you violate the terms and conditions of supervised release and you're sent back to prison, that new prison term could be for all or part of the term of supervised release.  You will not necessarily get credit for time that you've already served on supervised release.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If I accept your guilty plea and I adjudge you guilty, that adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any type of firearm, and the right to hold professional licenses.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Duran, you told me that you were born in Columbia.  What is your status in the United States?

MR. BRESLIN:  Your Honor, he was extradited.

O8LBDURP

THE COURT:  So he has no status in the United States?

MR. BRESLIN:  Not as that term is commonly understood.

THE COURT:  You don't have a green card or family in the United States?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have you discussed with Mr. Breslin what will happen at the end of your sentence on this case?

THE DEFENDANT:  Yes.

THE COURT:  What do you understand will happen at the end of your sentence?

THE DEFENDANT:  Once I complete my sentencing, I would be deported to Columbia.

THE COURT:  That is correct.  In the unlikely event that for some reason at that point Columbia is not accepting people and you were held in the United States, highly unlikely, but you never know, highly unlikely.  You are likely in all probability you're going to be deported to Columbia.  If for some possibility you're held in the United States, you'll be subject to supervised release.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Mr. Duran, there are sentencing guidelines that I have to consider in determining the appropriate sentence in your case.

Do you understand that?

O8LBDURP

THE DEFENDANT:  Could you please repeat that.

THE COURT:  Sure.  There are these things called sentencing guidelines that advise the judge on what an appropriate sentence is, and I have to consider those guidelines in determining your sentence.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you talked to Mr. Breslin about how the guidelines will apply in your case?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I'm going to have to calculate a guideline range and consider that range in determining what your sentence will be.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  In addition to determining what the guideline range is, I'm also going to have to consider the sentencing factors that are set forth in federal law.  Federal law requires me to consider a number of additional things, things about you and things about the offense in determining the appropriate sentence in your case.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So even after I determine what the guideline range is, those other factors could lead me to a sentence that is either longer than or shorter than or the same

O8LBDURP

as the guideline range.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If your attorney or anyone else has attempted to estimate or predict what your sentence will be, their estimate or prediction could be wrong.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: It's perfectly appropriate for you and your attorney to talk about how your sentence will be determined, but nobody can give you any assurance of what your sentence will actually be.

Do you understand that?

THE DEFENDANT: Correct.

THE COURT: It's my job to determine your sentence, and I can't do that until I've done the other things that I just described.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: So nobody, not even I can today predict what your sentence will be.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Duran, I'm stressing this at some length because it's important for you to understand that if

O8LBDURP

your sentence is different from what anyone has estimated or predicted it will be or what you hope it will be, that will not be grounds for you to withdraw your guilty plea.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you're sentenced to prison, there is no parole, and therefore you cannot be released early on parole.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: I've been given a copy of the plea agreement which we'll mark as Court Exhibit 1.

Did you sign the plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did someone read the agreement to you in Spanish before you signed it?

THE DEFENDANT: Yes, my lawyer.

THE COURT: Did you discuss the agreement with your lawyer before you signed it?

THE DEFENDANT: Yes.

THE COURT: Are there any agreements, promises or understanding with the government that are not contained in the plea agreement?

THE DEFENDANT: No, there is no other agreement.

THE COURT: Has anyone threatened you or forced you to plead guilty?

O8LBDURP

THE DEFENDANT: No, your Honor. I do it voluntarily.

THE COURT: Other than what's in the plea agreement, has anyone promised you anything or offered you any inducement to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone made a promise to you of what your sentence will be?

THE DEFENDANT: No, no one.

THE COURT: One of the provisions that's in your plea agreement is what's called a waiver of the statute of limitations. What that waiver means is that if for some reason at some point in the future your plea is withdrawn or your conviction is vacated, the government would be allowed to charge you at that point in time in the future with any crime they could charge you with today notwithstanding the passage of time.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you say yes you understood that?

THE DEFENDANT: Yes, your Honor.

THE COURT: The plea agreement also contains an agreement or a stipulation between you and the government regarding the sentencing guideline calculation that the attorneys believe applies in your case.

THE DEFENDANT: Could you please repeat that.

O8LBDURP

THE COURT: Sure.

MR. BRESLIN: Can I make one short clarification.

THE COURT: Yes.

MR. BRESLIN: The plea agreement was read to him in Spanish. I was present, but it was one of the courts's translators that actually translated and read it.

THE COURT: OK. Mr. Duran, the agreement that you signed contains within it an agreement between you and the government regarding the sentencing guidelines calculation that the attorneys believe applies in your case.

THE DEFENDANT: No, there is no agreement.

THE COURT: OK. You want to take a second and show it to him.

MR. BRESLIN: Can the question be asked again, your Honor?

THE COURT: Yes. Ready? OK.

THE DEFENDANT: Thank you.

THE COURT: Mr. Duran, the agreement that you signed contains within it an agreement between you and the government regarding the sentencing guidelines calculation that the attorneys believe applies in your case.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: That's an agreement between you and the government. It's binding on you and it's binding on the

O8LBDURP

government, so you have to maintain that position.

Do you understand that?

THE DEFENDANT: That's right, correct.

THE COURT: But it's not binding on me.

Do you understand that?

THE DEFENDANT: That's correct.

THE COURT: Regardless of what the attorneys think is the correct guideline calculation, I do my own calculation. 99.9 percent of the time I come up with the same thing as the attorneys do, but it's not always the same.

Do you understand that?

THE DEFENDANT: Correct, I understand.

THE COURT: Another provision that's in your plea agreement is that you're agreeing that you will not appeal your sentence or collaterally attack your sentence as long as my sentence is within or below the guideline range that you agreed applies.

Do you understand that?

THE DEFENDANT: That's fine.

THE COURT: So in your case that means so long as your sentence is 327 months or less, you are agreeing not to appeal.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: OK. Mr. Duran, in order for me to accept your guilty plea, I have to be convinced that you actually

O8LBDURP

committed this crime. So can you tell me what it is that you did that makes you guilty.

THE DEFENDANT: On August 25 and August 31, 2024 --

THE COURT: No. No. That can't be right. We haven't gotten to August 25 and August 31 yet.

MR. BRESLIN: 2021.

THE COURT: OK.

MR. BRESLIN: Your Honor, that's our fault.

THE COURT: I'm confident that's your fault.

MR. BRESLIN: I'm confident that you're confident. I do apologize.

THE COURT: Not a problem. OK. Start over. Mr. Duran, start over.

THE DEFENDANT: On August 25, 2021 in Cali, Columbia, and August 31, I was present at two meetings with my co-defendants Oscar Henao-Montoya, Rehinner Montoya-Garcia and others. During these meetings we talked about the possibility of working together to transport cocaine from Columbia to several locations. As a result of those meetings, I learn that the participants wanted the cocaine to ultimately end up in New York City. I offer assistance with transporting cocaine to Panama, Costa Rica or Guatemala, or to coordinate with others who could transport it, to transport the cocaine to the Dominican Republic. I also said that I would be able to receive payment for the cocaine transportation in Mexico City

O8LBDURP

if the deal went through. During the first meeting, I agreed to connect Rehinner Montoya-Garcia and others with someone who could assist with transporting the cocaine by airplane.

THE COURT: Let me make sure I understand. You were part of a group of people and agreed to help them arrange for transportation of cocaine from Columbia to Panama, Costa Rica, Guatemala and Dominican Republic, but you understood the goal was to then further transport that cocaine into the United States. Is that accurate?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you were also willing to be the party to whom payment was made, and you could receive the payment in Mexico City?

THE DEFENDANT: Yes, your Honor.

THE COURT: And was more than 500 grams of cocaine going to be transported?

THE DEFENDANT: Yeah, several quantities were discussed, but there was no amount precise.

THE COURT: No specific amount. Were all of the amounts that were discussed more than 500 grams?

THE DEFENDANT: Yes, your Honor.

THE COURT: OK. And, Mr. Duran, when you were having these meetings and conversations and agreeing to move the cocaine, did you know that what you were doing was wrong and against the law?

O8LBDURP

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did anyone threaten or coerce you or force you to participate in those meetings?

THE DEFENDANT:  A friend Oscar talk to me about it.

THE COURT:  Did he threaten you?

THE DEFENDANT:  No.

THE COURT:  Did he force you?

THE DEFENDANT:  No.

THE COURT:  Does either attorney want me to make further inquiry?

MR. ADELSBERG:  No, I think your helpful clarifications were sufficient.

MR. BRESLIN:  I'm sorry.  I missed what he said.

THE COURT:  He said my clarification was helpful.

MR. BRESLIN:  I think the component parts of the statute have been satisfied, your Honor.

THE COURT:  And venue was appropriate because he was brought here.

Mr. Breslin, do you know of any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty?

MR. BRESLIN:  No, your Honor.

THE COURT:  Do you believe there's an adequate factual basis to support the plea.

MR. BRESLIN:  Yes, your Honor.

O8LBDURP

THE COURT: Mr. Adelsberg, do you believe there's an adequate factual basis to support the plea?

MR. ADELSBERG: Yes, your Honor.

THE COURT: Mr. Duran, how do you now plead to the lesser-included of Count One, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: The indictment that you're pleading guilty to includes a forfeiture allegation. That forfeiture allegation means is that you're required to forfeit to the government any proceeds of this crime or any property that was used to commit the crime. Do you agree to forfeit such property to the government?

THE DEFENDANT: The drug was never ever transported. The subject was discussed.

THE COURT: So you're saying there are no proceeds?

MR. BRESLIN: The conspiracy was entered into. It was never --

THE COURT: -- consummated?

MR. BRESLIN: Yes.

THE COURT: So is the government actually seeking forfeiture in this case?

MR. ADELSBERG: We're not going to seek forfeiture

O8LBDURP

here, your Honor.

MR. BRESLIN:  It's in there I think cause that's the form.

THE COURT:  Because it's always in there.

MR. BRESLIN:  It's always in there.

THE COURT:  I find there is an adequate factual basis for the plea, that Mr. Duran understands the rights he is giving up and is agreeing to waive those rights knowingly and voluntarily.  I find Mr. Duran understands the consequences of his plea, including the potential sentence that may be imposed. Cause I find the defendant's plea is entered knowingly and voluntarily and is supported by an independent factual basis for each and every element of the crime charged, I accept his guilty plea.  I direct that a presentence investigation conducted by the probation office and that a presentence report be prepared.

Mr. Duran, you're going to be interviewed by the probation office as part of the presentence investigation process.  You can and you should have your lawyer with you for that interview.  If you decide to talk to the probation officer, it's important that what you say is truthful and complete.  The report that probation prepares is very important to me in determining what an appropriate sentence is in your case, so it's important that I have complete and accurate information.

O8LBDURP

Probation is going to prepare a draft report which they're going to provide to Mr. Breslin and he'll provide it to you. Make sure you go through the draft carefully. And if anything in it isn't correct, make sure you tell Mr. Breslin so he can tell probation so the report can be corrected before the time of sentence. On the day of sentence, both you and your attorney will have an opportunity to speak on your behalf. We got a sentencing date of December the 10th at 10:30. Presentence submissions are due November 26.

Mr. Adelsberg, if you could please provide your statement of the government's case to probation within the next two weeks. Mr. Breslin, please schedule your client's interview in the next two weeks.

Anything further from the government, Mr. Adelsberg?

MR. ADELSBERG: No, your Honor.

THE COURT: Mr. Breslin?

MR. BRESLIN: No, your Honor.

THE COURT: Thanks, everybody.

(Adjourned)